Order Form (01/2005)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Robert M. Dow, Jr. | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 12 C 4785 | **DATE** | 3/25/2013 |
| **CASE TITLE** | Long, et al. vs. KZF Development, et al. | | |

**DOCKET ENTRY TEXT**

For the reasons stated below, Defendants' motion to dismiss or in the alternative for summary judgment on Plaintiffs' federal claims [15] is granted. The Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims and they are dismissed without prejudice.

■[ For further details see text below.]

Docketing to mail notices.

## STATEMENT

**I.    Background**

In May 2011, KZF Development (KZF) and/or Dundee Partners (Dundee) removed approximately 180 trees from a 6.8 acre residential parcel in Northbrook, Illinois (the Site). Plaintiffs Robert and Sheryl Long allege that the tree removal causes flooding, which has, among other things, damaged their home. On June 15, 2012, Plaintiffs filed this lawsuit alleging violations of the Clean Water Act, 33 U.S.C. § 1365 (Count I), as well as nuisance, trespass, and negligence under Illinois law (Counts II – IV).

Count I is brought under the "citizen suit" provision of the Clean Water Act. At least 60 days before filing their Clean Water Act citizen suit, Plaintiffs were required to give notice of the alleged violation to (1) the EPA, (2) the state in which the alleged violation occurs, and (3) the alleged violator. 33 U.S.C. § 1365(b)(1) ("[n]o action may be commenced" without notice to the EPA, the state, and the alleged violator); see also, e.g., *Hallstrom v. Tillamook County*, 493 U.S. 20, 31 (1989) (holding that an identical notice requirement in Resource Conservation and Recovery Act was a mandatory precondition to suit); *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp*, 629 F.3d 387, 399-400 (4th Cir. 2011) (holding that adequate notice is a mandatory precondition of a Clean Water Act citizen suit). Moreover, Plaintiff may only allege ongoing violations in a citizen suit, and the Court must dismiss the suit if it alleges "wholly past violations." See, *e.g.*, *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation, Inc.*, 484 U.S. 49, 64 (1987).

In the motion before the Court, Defendants argue that Count I must be dismissed because Plaintiffs did not provide proper 60-day notice — they gave notice to KZF, not Dundee, which owns the Site — and even if the proper parties were given notice, the notice letter alleged nothing more than that Defendants lacked required

permits, a problem that was cured before Plaintiffs had a right to sue and, in any event, long before Plaintiffs filed this lawsuit. Thus, Defendants argue, Plaintiffs' only properly-noticed claims are "wholly past" and therefore, regardless of who was given notice, Count I must be dismissed and with it the entire complaint because Count I is the basis for federal jurisdiction.

On January 16, 2012, Plaintiffs sent the EPA, the Illinois Environmental Protection Agency (IEPA), and KZF a "60-Day Notice of Intent to Sue for Violations of the Clean Water Act" (Notice). The Notice, which is attached to Plaintiff's complaint, states that the Longs' own property is "within approximately 50 yards from ["the Site"] owned by KZF Development." The Notice continued:

> KZF Development is the owner of the Site and is, therefore, responsible and liable for all land disturbing construction activities on the Site. *See* 33 U.S.C. § 1365(a)(1); 33 U.S.C. § 1362(5). Additionally, KZF Development is the lead operator of the land disturbing activities outlined in this notice letter and, thus, is also liable for all Clean Water Act violations associated with such activities as an "operator." *Id.*

The Notice went on to describe two alleged violations of the Clean Water Act. First, "[s]ince at least May 11, 2011, KZF Development has engaged in land disturbing activities on the Site * * *, without [National Pollutant Discharge Elimination System (NPDES)] permit approval and authorization." Without that required permit, the Notice continued, "every day stormwater is discharged from the Site is a separate Clean Water Act violation." Second, "[o]n or around May 11, 2011 KZF Development commenced land disturbing construction activities, and continues to engage in such activities, without implementing and adhering to a Stormwater Pollution Prevention Plan (SWPPP). * * * According to the [IEPA] records, KZF Development has not submitted, and IEPA has not approved, a SWPPP for KZF Development's land disturbing construction activities on the Site. * * * Under federal law, every day that stormwater is discharged from a regulated construction site, without adhering to and complying with an authorized SWPPP, is a separate Clean Water Act violation." The Notice concluded that "should the above violations continued at the end of the 60-day notice period, the Longs intend to file suit against you for all past and ongoing violations of the Clean Water Act."

Instead of issuing separate NPDES permits, the IEPA has issued a "General Permit" that contains the requirements applicable to all covered stormwater discharges. See www.epa.state.il.us/water/permits/storm-water/construction.html. A developer can avail itself of the authorization provided by the General Permit by submitting a Notice of Intent (NOI) to the IEPA that contains all required information.

On February 7, 2012, Dundee filed an NOI and Incidence of Noncompliance with IEPA requesting coverage under the General Permit and indicating that it should have filed earlier notice that Dundee would be replacing Mega Development (the previous developer) on the project. Dundee also advised the IEPA that it would be using the same development plan and SWPPP that the previous developer had been using, and it attached that SWPPP to its filing. On March 7, 2012, the IEPA sent Dundee a letter confirming that it was covered by the General Permit.

On March 12, 2012, in response to Plaintiffs' 60-day Notice, KZF wrote to Plaintiffs and stated that the Site

2

| STATEMENT |
|---|

is "not owned by KZF Development as alleged, but rather by Dundee Partners, LLC. As a result, your notice has been sent to the wrong party and is defective." The letter went on to state that even if Plaintiffs' notice was not defective, the citizen-suit provision of the Clean Water Act only permits suits for an "ongoing violation" and quoted the Supreme Court's opinion in *Gwaltney*. The letter maintained that there is no "ongoing violation" at the Site because the owners were now authorized to operate under the General Permit and a SWPPP identical to that of the previous developer.

## II.     Legal Standard

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To avoid summary judgment, the opposing party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 250 (1986) (internal quotation marks and citation omitted). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is proper against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. The party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the [opposing] position will be insufficient; there must be evidence on which the jury could reasonably find for the [opposing party]." *Anderson*, 477 U.S. at 252.

## III.    Analysis

### A.     Clean Water Act Claims (Count I)

In their opening brief, Defendants argue that Plaintiffs' Clean Water Act claim must be dismissed because they sent Notice to the wrong party: the Notice was sent to KZF, but Dundee is the owner. Despite having been so advised by KZF, Plaintiffs did not send a new notice, but instead sued KZF *and* Dundee. Plaintiffs' response brief explains that both the owner and "operator" of a construction site are required to ensure compliance with the General Permit, both can be liable for Clean Water Act violations, and that KZF is the Site's operator. See, *e.g.*, *Sierra Club v. El Paso Gold Mines, Inc.*, 421 F.3d 1133, 1143-44 (10th Cir. 2005); see also www.epa.state.il.us/water/permits/storm-water/construction.html (operators — defined as "person or persons with control of construction project plans and specifications, or day-to-day operational control of activities necessary to ensure compliance with storm water NPDES permit conditions" — required to obtain permit coverage). This argument is persuasive: KZF is listed as the "developer" on zoning documents; it makes its operational control clear in a letter to Northbrook ("Attached is a list of steps KZF has taken to comply with Village regulations," listing tree removal, mowing, demolition of homes, among other things); and a sign on the Site proudly declares that the Site is "Another KZF Development."

3

| **STATEMENT** |
|---|

In addition, Plaintiffs explain that although the Notice was sent to KZF as an owner or operator and not to Dundee, the actual owner, Dundee is managed by KZF Dundee, which is managed by KZF Holdings, which is managed by Daniel Zivin, Joel Kogen, and Suzanne Kogen-Friedman, who are the corporate officers for KZF Development. Moreover, KZF Development and Dundee share an address and the same registered agent, Daniel Zivin. Plaintiffs' Notice was addressed to KZF Development, Suzanne Kogen-Friedman, Joel Kogen, Daniel Zivin, and Steven Friedman.

And, of course, the owners of the Site had actual notice: Plaintiff's Notice caused Defendants to correct the problems it described. Taken together, the Court is confident that Plaintiffs' Notice was not invalid as to KZF merely because it misdescribed KZF as the owner. The notice requirement in 33 U.S.C. § 1365(a)(1) is a mandatory prerequisite of a Clean Water Act citizen suit, but Defendants do not cite any case explaining that partly mischaracterizing an entity nullifies notice. See *Atlantic States Legal Foundation, Inc. v. Stroh Die Casting, Co.*, 116 F.3d 814, 819 (7th Cir. 1997) (notice was sufficiently precise when the defendant "knew exactly what [the plaintiff] was concerned about and it was taking steps to address this matter").

But the Court need not dwell on that point, because Plaintiffs' Notice is insufficient in another respect: the Notice identified two possible violations of the Clean Water Act (Defendants were not covered by the General Permit and had no SWPPP); Defendants conceded those problems and addressed them. Plaintiffs did not put Defendants on notice of any additional violation, or any violations that Defendants did not promptly address. Plaintiffs now allege that the SWPPP is not a valid SWPPP. "Among other flaws," the Plaintiffs now claim that the plan (which they call an SESC Plan, or a purported SWPPP):

a. Does not reflect the current conditions of the Site, as required by NPDES Permit ILR10, Part IV(C).

b. Does not contain a site map with the drainage patterns and approximate slopes anticipated before and after major grading activities, as required by NPDES Permit ILR10, Part IV (D)(1)(e).

c. Does not describe appropriate controls and the timing during the construction process that the controls will be implemented, as required by NPDES Permit ILR10, Part IV (D)(2). Instead, the SESC Plan states that best management practices will be "implemented on an as-needed basis to protect water quality." (Exhibit C, SESC Plan, Part 2(B).)

d. Does not include a site map identifying the location of major structural and non structural controls for stormwater management, as required in NPDES Permit ILR10, Part IV (D)(1)(e).

e. Does not include an explanation of the technical basis used to select practices to control pollution where flows exceed predevelopment levels, as required in NPDES Permit ILR10, Part IV (D)(2)(b)(ii).

f. Does not include a record of dates when major grading activities occur, when construction activities cease on a portion of the site and when stabilization measures are initiated, as

required in NPDES Permit ILR10, Part IV (D)(2)(a)(i). Instead, the Plan expressly states that this information "should be included in the SWPPP." (Exhibit C, SESC Plan, Part 2(C)(1).)

g. Fails to identify the contractors that will implement each measure identified in the SWPPP, as required in NPDES Permit ILR10, Part IV (F)(1). Instead, the Plan expressly states that this information should be identified in the SWPPP. (Exhibit C, SESC Plan, Part 2.).

h. Fails to include signed certification statements by all contractors and subcontractors identified in the SWPPP, as required in NPDES Permit ILR10, Part IV (F)(2). Instead, the Plan expressly states that, "[a]ll signed certification statements should be maintained in the SWPPP." (Exhibit C, SESC Plan, Part 2.)

i. Fails to set forth stormwater management controls that are designed for a storm event equal to or greater than a 25-year, 24 hour rainfall event, as required by NPDES Permit ILR10, Part IV(D)(2)(b)(iii).

j. Is not signed, as required by NPDES Permit ILR10, Part IV(B).

Compl. ¶ 67. Plaintiffs' did not give Defendants notice of any of these alleged flaws. The Notice addressed a separate (and prior) issue: the failure to be covered by required plans. Defendants admitted they were not covered, took action, and the IEPA concluded that Plaintiffs are now "covered." If, notwithstanding Defendants' response, Plaintiffs believed that issues remained, such as the detailed problems listed in the complaint, Plaintiffs (if they wanted to have the option of bringing a citizen suit, at least) were required to give Defendants notice of *those* problems, which would have given Defendants a chance to address them and avoid suit.

In *Gwaltney*, the Supreme Court held that Clean Water Act citizen suits must be for *ongoing* violations of the Act not only because of the language of § 1365 — its "pervasive use of the present tense," permitting suits against any person "who is alleged *to be in violation*" of the Act — but also because (among other reasons) allowing suits for "wholly past violations" "renders incomprehensible" the notice provision at issue in this case. 484 U.S. at 59-60. The notice provision

> requires citizens to give 60 days' notice of their intent to sue to the alleged violator as well as to the Administrator and the State. § 1365(b)(1)(A). If the Administrator or the State commences enforcement action within that 60-day period, the citizen suit is barred, presumably because governmental action has rendered it unnecessary. § 1365(b)(1)(B). *It follows logically that the purpose of notice to the alleged violator is to give it an opportunity to bring itself into complete compliance with the Act and thus likewise render unnecessary a citizen suit.* If we assume, as respondents urge, that citizen suits may target wholly past violations, the requirement of notice to the alleged violator becomes gratuitous.

*Id.* (footnote omitted and emphasis added). EPA regulations reinforce the point made by the Supreme Court about the purpose of the notice requirement and offer additional guidance about the content of the notice:

5

> Notice regarding an alleged violation of an effluent standard or limitation or of an order with respect thereto, shall include sufficient information to permit the recipient to identify the specific standard, limitation, or order alleged to have been violated, the activity alleged to constitute a violation, the person or persons responsible for the alleged violation, the location of the alleged violation, the date or dates of such violation, and the full name, address, and telephone number of the person giving notice.

40 C.F.R. § 135.3. Citing this same authority, the Seventh Circuit explained that [i]n practical terms, the notice must be sufficiently specific to inform the alleged violator about what it is doing wrong, so that it will know what corrective actions will avert a lawsuit." *Atlantic States*, 116 F.3d at 819. "The key to notice is to give the accused company the opportunity to correct the problem." *Id.* at 820; *Center for Biological Diversity v. Marina Point Development Co.*, 556 F.3d 794, 800 (9th Cir. 2008) ("[The 60-day notice] is not just an annoying piece of paper intended as a stumbling block for people who want to sue; it is purposive in nature and the purpose is to accomplish corrections where needed without the necessity of a citizen action.").

In *Atlantic States*, the court concluded that a notice letter complaining about discharges from outfall 3 were sufficient to permit a lawsuit complaining about discharges from outfall 4, when the discharges from outfall 3 had been rerouted to outfall 4 in response to Plaintiffs' notice. *Atlantic States*, 116 F.3d 819-20. The fact that the Defendant took action to correct the problem supported the conclusion that the defendant "knew exactly what [plaintiff] was concerned about," and so the notice was sufficient. *Id.* at 819.

In this case, the Court believes that it was clear which parties Plaintiffs considered responsible (whether incorrectly identified as the owner or correctly as the operator, the owner and the operator took responsive actions), but it was not evident that Plaintiff was complaining about anything other than Defendants' failure to be covered by the General Permit and a SWPPP. A different conclusion would put too much weight on the statements in Plaintiffs' Notice that Defendants must also *"adhere to an authorized"* plan. Giving such weight to that phrase would position Plaintiffs to sue over *any* shortcoming of the SWPPP (not "authorized") or *any* deviation from its dictates (not "adhering"). That, however, would undermine the purpose of the 60-day notice, which, as discussed, is to give Defendants an opportunity to rectify the problem and avoid suit and to provide the EPA and IEPA an opportunity to take action before a citizen suit. Plaintiffs' entirely general admonition that Defendants must adhere to authorized permits did not fulfill that purpose in view of Plaintiffs' specific allegations in this lawsuit. See, *e.g., Karr v. Hefner, et al.*, 475 F.3d 1192, 1206 (10th Cir. 2007) (affirming dismissal of citizen suit claims because the plaintiff's notice letters lacked specificity: "They are hardly more helpful than a letter telling Defendants merely that they have violated the [Clean Water Act] at each listed site."); *Center for Biological Diversity v. Marina Point Development Co.*, 556 F.3d 794, 801 (9th Cir. 2008) ("We have sometimes been slightly forgiving to plaintiffs [about how detailed notice must be], but even at our most lenient we have never abandoned the requirement that there be a true notice that tells a target precisely what it did wrong, and when. The target is not required to play a guessing game in that respect.").

Once Defendants cured the specific problems identified in Plaintiffs' Notice, if Plaintiffs believed that Defendants remained in violation and wanted to motivate Defendants to change their conduct with the possibility of a citizen suit, Plaintiffs needed to provide Defendants' with another notice, one with sufficient

| STATEMENT |
|---|

information to address the problems that would eventually be the subject of a federal lawsuit. The Court rejects the idea it is foisting an impossible burden on Plaintiffs by requiring that this suit be supported by a notice containing details not available at the time of the first (and only) Notice. That Notice was good, but just not for the claims Plaintiffs seek to advance in this lawsuit. The Court could not square a different result with fundamental requirement that a 60-day notice must "be sufficiently specific to inform the alleged violator about what it is doing wrong, so that it will know what corrective actions will avert a lawsuit." *Atlantic States*, 116 F.3d at 819.

Not having given Defendants notice of the violations alleged in this lawsuit, but only for violations that had already been addressed by the end of the 60-day notice period and that were therefore "wholly past" by the time Plaintiffs would have been permitted to sue for properly noticed ongoing violations, Plaintiffs' Clean Water Act claims must be dismissed. See, *e.g.*, *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 629 F.3d 387, 399-403 (4th Cir. 2011) (holding that "the district court erred in finding violations that were not alleged specifically in the plaintiffs' notice letter" and no penalties could be imposed for those violations); *ONRC Action v. Columbia Plywood, Inc.*, 286 F.3d 1137, 1144 (9th Cir. 2002) (holding that some of the claims raised in the plaintiff's complaint "were not properly raised in its 60-day citizen suit notice; thus, the district court correctly held that it lacked subject matter jurisdiction over those claims").

### B. State Law Claims (Counts II – IV).

Plaintiffs' federal claim must be dismissed, and the Court is now required to decide whether to retain jurisdiction over Plaintiff's state law claims. See 28 U.S.C. § 1367(c)(3). The Seventh Circuit, animated by the principle of comity, consistently has stated that "it is the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial." *Groce v. Eli Lilly,* 193 F.3d 496, 501 (7th Cir. 1999); *Alonzi v. Budget Constr. Co.,* 55 F.3d 331, 334 (7th Cir. 1995); *Brazinski v. Amoco Petroleum Additives Co.,* 6 F.3d 1176, 1182 (7th Cir. 1993); see also *Wright v. Associated Ins. Co.,* Inc., 29 F.3d 1244, 1251 (7th Cir. 1994) ("When all federal claims have been dismissed prior to trial, the principle of comity encourages federal courts to relinquish supplemental jurisdiction * * * "); see also *Horton v. Schultz,* 2010 WL 1541265, at *4 (N.D. Ill. Apr. 16, 2010).

In *Wright v. Associated Ins. Cos.,* 29 F.3d 1244, 1251–53 (7th Cir. 1994), the Seventh Circuit noted that there occasionally are "unusual cases in which the balance of factors to be considered under the pendent jurisdiction doctrine judicial economy, convenience, fairness, and comity — will point to a federal decision of the state-law claims on the merits." The first example that the Court discussed occurs "when the statute of limitations has run on the pendent claim, precluding the filing of a separate suit in state court." *Id.* at 1251. That concern is not present here, however, because Illinois law gives Plaintiff one year from the dismissal on jurisdictional grounds of state law claims in federal court in which to re-file those claims in state court. See 735 ILCS 5/13–217; *Davis v. Cook County,* 534 F.3d 650, 654 (7th Cir. 2008). Dismissal without prejudice of the state law claims also is appropriate here because the case is at an early stage and substantial judicial resources have not been committed to the state law counts in Plaintiffs' complaint. *Wright,* 29 F.3d at 1251. Finding no justification for departing from that "usual practice" in this case, the Court dismisses without prejudice Plaintiff's state law claims without discussing their merit under state law.

7

| STATEMENT |
|---|
| **IV. Conclusion**<br><br>For the reasons stated above, Defendants' motion to dismiss or in the alternative for summary judgment on Plaintiffs' federal claims [15] is granted. The Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims and they are dismissed without prejudice.<br><br>*[Signature]* |